Susan WOOD, Individually and as Representative of the Estates of J.D. McCullough and Fern Mccullough and the Estate of J.D. McCullough, Appellants,

v.

PHILLIPS PETROLEUM COMPANY, Bethlehem Steel Corporation, Exxonmobil Corporation, Chevron U.S.A., Inc., Successor to Gulf Oil Corporation, Suntide, Inc., Texaco, Inc., Amoco Chemical Company, Amoco Corporation, and Amoco Oil Company, Appellees.

No. 14–01–01062–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 9, 2003.

Rehearing Overruled Nov. 6, 2003.

Rehearing En Banc Overruled Nov. 20, 2003.

J. Michael Black, Houston, for appellants.

James B. Galbraith, Galveston, James V. Bashian, New York, NY, Reagan W. Simpson, Robert Scott, Stephen Dillard, Houston, for appellees.

Panel consists of Justices YATES, RICHARD H. EDELMAN, and DRAUGHN.*

## OPINION

RICHARD H. EDELMAN, Justice.

In this wrongful death action, Susan Wood, individually and as representative of the estates of J.D. McCullough and Fern McCullough, and the estate of J.D. McCullough [1] appeal a summary judgment in favor of Phillips Petroleum Company, Bethlehem Steel Corporation, ExxonMobil Corporation, Chevron U.S.A., Inc., Succes-

---

* Senior Justice Joe L. Draughn sitting by assignment.

1. It is not apparent from our record why the Estate and its representative are both listed as parties.

sor to Gulf Oil Corporation, Suntide, Inc., Texaco, Inc., Amoco Chemical Company, Amoco Corporation, and Amoco Oil Company, on various grounds. We affirm.

## Background

J.D. McCullough was allegedly exposed to benzene while working for Monsanto Company ("Monsanto") from 1951 to 1964 and contracted acute myelogenous leukemia ("AML") which caused his death. A lawsuit was filed on behalf of his and his wife's estates against Monsanto and appellees asserting claims for strict liability, negligence, gross negligence, misrepresentation, fraud, breach of warranty, and conspiracy. Monsanto was dismissed from the case after it reached a settlement with appellants, and appellees filed a motion for summary judgment based on: (1) a "bulk supplier" defense; (2) no evidence of cause-in-fact; and (3) no evidence of product identification.[2] The trial court granted appellees a take-nothing summary judgment on all of appellants' claims without specifying the ground(s) it relied upon.

## Standard of Review

A traditional summary judgment may be granted if the motion and summary judgment evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or response. Tex.R. Civ. P. 166a(c). A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002).

A no-evidence summary judgment must be granted if a motion for summary judgment asserts that there is no evidence of an essential element of an adverse party's claim and the nonmovant fails to produce summary judgment evidence raising a genuine issue of material fact on that element. *See* Tex.R. Civ. P. 166a(I). In reviewing a no-evidence summary judgment, we examine the record in the light most favorable to the nonmovant, looking to see if more than a scintilla of evidence raised a genuine issue of material fact on the challenged element. *See Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002).

In reviewing a summary judgment, we also take as true all evidence favorable to the nonmovant, and indulge every reasonable inference, and resolve any doubts, in the nonmovants' favor. *Grant,* 73 S.W.3d at 215. Where a summary judgment does not specify the grounds relied upon for its ruling, it will be affirmed if any of the theories advanced are meritorious. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001).

## Evidentiary Issues

Appellants' first issue argues that appellees' summary judgment evidence could not properly be considered because it was irrelevant, hearsay, hearsay within hearsay, and not produced in response to discovery. The items of evidence to which appellants' brief assigns error in this regard are the *Poston* deposition, and defendants' exhibits E, F, I, J, K, L, M, and N. To the extent it is necessary to rely on any of these materials to affirm the trial court's judgment, we will address their admissibility as they are otherwise referred to.

**2.** Each of appellees' grounds for summary judgment was asserted as against all of appellants' claims, and appellants' brief does not contend that any of those grounds apply differently as among their claims. Therefore, we do not distinguish among appellants' claims in addressing the merits of the summary judgment grounds.

### Bulk Supplier and Cause–in–Fact

Appellants' third issue[3] contends that appellees failed to prove that they discovered or warned Monsanto, or that Monsanto otherwise knew, how to use benzene safely. In this regard, appellants' petition alleged, among other things, that appellees, as manufacturers of benzene, breached their duties to: (1) perform testing necessary to determine the levels of occupational exposure to benzene at which it had toxic effects to workers; (2) warn that they had failed to do so and that the threshold limit values recommended by the American Conference of Governmental Industrial Hygienists were unproven and unsafe; and (3) instruct McCullough or Monsanto on the safe use and handling of benzene.

One ground of appellees' motion for summary judgment was the "bulk supplier" defense, *i.e.*, that appellees had no such duty to warn McCullough or Monsanto because they supplied the benzene to Monsanto in bulk and Monsanto was familiar with the properties, hazards, and safe use of benzene and was thereby capable of warning its employees adequately. Appellees' motion similarly sought to negate the cause-in-fact element of appellants' claims by contending that, because Monsanto was capable of providing such warnings, appellees' alleged failure to provide them could not have been a cause-in-fact of McCullough's injury.

■■■■ The existence of a duty to warn of dangers or instruct on the safe use of a product is a question of law. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 426 (Tex. 1997). A manufacturer has a duty to warn if it knows or *should know* of potential harm to a user[4] because of the nature of its product. *Id.; Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978).[5] Dangers that a seller "should know" include those that are reasonably forseeable or scientifically discoverable at the time the product is sold.[6] *See Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1088 (5th Cir.1973). A manufacturer also has a duty to instruct users on the safe use of its product. *Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330, 338 (5th Cir.1984). In this regard, a manufacturer is held to the knowledge and skill of an expert. *Borel,* 493 F.2d at 1089. This means that it must not only keep abreast of scientific knowledge, discoveries, and advances, but, more importantly, test and inspect its product. *Id.* at 1089–90. This duty to research and experiment is commensurate with the dangers involved. *Id.* at 1090. A manufacturer may not rely

---

**3.** We proceed to appellants' third issue because it is dispositive of the appeal.

**4.** The duty exists only as to hazards of which an ordinary user of the product is unaware; therefore, a particular user's subjective experience and knowledge are not relevant in determining the existence of the duty to warn. *Sauder Custom Fabrication, Inc. v. Boyd,* 967 S.W.2d 349, 350–51 (Tex.1998).

**5.** *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (requiring seller to give warning if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge). A worker, like any other user, has a right to decide whether to

expose himself to the risk associated with the use of a product. *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1106 (5th Cir. 1973).

**6.** Thus, as contrasted from other grounds for strict liability, which subject a seller to liability for product defects even where he has exercised all possible care, liability for failure to warn is imposed (like negligence liability) only for a failure to exercise reasonable care in discovering, and warning of, a danger. *Borel,* 493 F.2d at 1088. Thus, too, the determination whether a duty to warn exists is made as of the time the product leaves the manufacturer. *Gen. Motors Corp. v. Saenz,* 873 S.W.2d 353, 356 (Tex.1993).

unquestioningly on others to raise concerns about its product, but must instead show that its own conduct was proportionate to the scope of its duty. *Id.*

▮ In some instances, a bulk supplier, who has no package of its own on which to place a label, may satisfy its duty to warn ultimate users of its product by proving that the intermediary to whom it sells the product is adequately trained and warned, familiar with the propensities of the product and its safe use, and capable of passing its knowledge on to users in a warning. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591–92 (Tex.1986).[7] The question in any case is whether a bulk supplier has a reasonable assurance that its warning will reach those endangered by the use of its product. *See id.* at 591.

As has been recognized in other cases [8] and reiterated by the evidence in this case, the highly toxic character of benzene has been commonly known in the petrochemical industry, including Monsanto, for many years. For example, as appellants' brief acknowledges, the American Petroleum Institute reported in 1948 that benzene could cause leukemia, the only absolutely safe concentration for benzene was zero, and all human contact with benzene should be avoided.[9] Moreover, as appellants' brief further points out, although diminishing levels of exposure to benzene have been recommended over the years by various groups, no study has ever demonstrated a level of exposure above zero that is "safe" from potentially harmful effects.[10]

▮ Under these circumstances, appellees cannot properly be subjected to a duty to have determined a "safe" level of exposure to benzene when McCullough worked for Monsanto, as appellants contend, because such a determination was not scientifically discoverable at that time. Rather, as the evidence in this case reflects, protecting workers from the ill effects of benzene exposure could be accomplished, if at all, only by minimizing such exposure with engineering controls (such as devices to keep benzene contained and work areas well ventilated), personal protective and respiratory equipment, and environmental and medical monitoring.[11] In that the evidence in this case reflects that the need for

---

7. *See Humble Sand & Gravel, Inc. v. Gomez,* 48 S.W.3d 487, 494 (Tex.App.-Texarkana 2001, pet. granted); *Munoz v. Gulf Oil Co.,* 732 S.W.2d 62, 66 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Khan v. Velsicol Chem. Corp.,* 711 S.W.2d 310, 313–14 (Tex. App.-Dallas 1986, writ ref'd n.r.e.).

8. *See, e.g., Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 922 (Tex.1998).

9. *See id.* Monsanto's knowledge in this regard is reflected by, among other things, a 1950 article published by its medical director, Lamson Blaney, M.D. (the "Blaney article"), recognizing that a zero exposure level had been advocated by that time.

10. Thus, for example, despite adopting a 10 parts per million ("ppm") standard in 1971, the Occupational Safety and Health Administration ("OSHA") continued to recognize that an absolutely safe level of exposure could not be demonstrated, and attempted unsuccessfully in 1978 to further lower the standard to 1 ppm. *See Indus. Union Dep't, AFL–CIO v. Am. Petroleum Inst.,* 448 U.S. 607, 617, 625, 627, 662, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980).

11. Monsanto's knowledge of the existence and necessity of such precautions during the relevant period is reflected, among other places, in the Blaney article and a 1986 summary judgment affidavit of Emmet Kelly, M.D., the Medical Director for Monsanto from 1939–42 and 1946–74. Although appellants' brief asserts generally that this affidavit is hearsay, it does not explain why it is of any different hearsay character than summary judgment affidavits generally or why it would be any less admissible for summary judgment purposes in this case than in the case for which it was originally submitted.

such precautions was well understood by Monsanto during the years McCullough worked there, appellees had no duty to instruct Monsanto on these matters, and, correspondingly, any failure by Monsanto to protect McCullough from exposure to benzene was not caused by appellees. Accordingly, appellants' challenge to this ground for summary judgment is overruled, appellants' challenges to the other grounds for summary judgment need not be addressed, and the judgment of the trial court is affirmed.